## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ELTON THOMAS**                                    **CIVIL ACTION**

**VERSUS**                                          **NO.  07-6198**

**BURL CAIN, WARDEN**                               **SECTION "S"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

I.      **Factual and Procedural Background**

A.      **Factual Summary**

The petitioner, Elton Thomas ("Thomas"), is a convicted prisoner incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On March 3, 2001, Thomas was arrested by the

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

Jefferson Parish Sheriff's Office for armed robbery in violation of La. Rev. Stat. Ann. § 14:64 and aggravated battery in violation of La. Rev. Stat. Ann. § 14:34.[3]

On April 12, 2001, Thomas and a co-defendant, Mary Uloho, were charged by bill of information in Jefferson Parish in Case No. 01-1657 with the armed robbery of Terry Bean ("Bean").[4] That same day, they were jointly charged in a separate bill of information in Jefferson Parish in Case No. 01-1922 with aggravated battery upon Bean.[5] As outlined below, the pretrial proceedings were conducted jointly in both cases and for both defendants, but the records were maintained separately.

The record reflects that, at approximately 11:30 a.m. on March 3, 2001, Bean, an armored truck driver for Loomis Fargo, was the victim of an armed robbery at the Albertson's grocery store on Barataria Boulevard in Marrero, Louisiana.[6] A short while earlier, the store manager, Jarrod Guichard ("Guichard"), and Bean had been in the vault room, where Guichard gave Bean a bag containing $15,000 in cash and $19,000 in checks and deposits.

As Bean left the vault room, he saw a black male wearing red sweat pants, who appeared to be shopping for a movie in the store's videotape section. When Bean was approximately three feet away, the man turned, pulled out a gun, and ordered Bean to put his hands in the air. The man took Bean's gun and the bag of money. The man ordered Bean to lie on the ground, and Bean complied. The man struck Bean in the head with a gun three times and ran out the store.

---

[3]St. Rec. Vol. 2 of 8, Arrest Report and Probable Cause Affidavit, 3/01/01.

[4]St. Rec. Vol. 1 of 8, Bill of Information, 01-1657, 4/12/01.

[5]St. Rec. Vol. 4 of 8, Bill of Information, 01-1922, 4/12/01.

[6]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on the out-of-time appeal. *State v. Thomas*, 904 So.2d 896, 900-01 (La. App. 5th Cir. 2005); St. Rec. Vol. 4 of 8, 5th Cir. Opinion, 04-KA-1341 c/w 04-KA-1342, 5/31/05.

When Guichard came out of the vault room, he saw Bean on the floor in a daze.  Guichard saw some customers pointing toward the exit and ran in that direction.  He saw an individual, wearing a red jump suit and what appeared to be a woman's wig, enter a late-model black Lincoln Towncar with a temporary license tag in the back window.  The vehicle headed southbound on Barataria Boulevard.

Deputy Christopher Gui of the Jefferson Parish's Sheriff's Office responded to the scene. After interviewing witnesses, Deputy Gui learned that the perpetrator ran out of the store with a black female.  He obtained a description of the female, the perpetrator, and the vehicle.  Thereafter, he turned the investigation over to the responding detectives.

While in the town of Lafitte on an unrelated call, Deputy Brent Coussou heard a broadcast over the police radio describing the suspect and the vehicle involved in the armed robbery.  Deputy Coussou saw a Lincoln that matched the description of the suspect's vehicle near the E-Z Serve in Lafitte.  Deputy Coussou stopped the vehicle, ordered the passenger, later identified as co-defendant Mary Uloho, to place her hands on the ceiling of the car, and ordered the driver to step out.  Deputy Coussou, with the assistance of another officer, handcuffed the driver, later identified as Elton L. Thomas, Jr.

Meanwhile, Detective John Carroll brought Guichard to the scene, where he identified the Lincoln as the one that had fled from Albertson's.  Detective Carroll then removed Thomas from the police unit and stood next to him while Detective Decker drove by with Bean, who positively identified Thomas as the person who robbed and struck him.  Bean also positively identified Thomas at trial.  Detective Carroll transported Thomas to the Jefferson Parish Detective Bureau, where Thomas made a statement after waiving his constitutional rights.  Thomas gave his name as "Pablo

Moses" and stated that he had just met Mary Uloho. Thomas claimed that she had nothing to do with the earlier events and that she was pressured into doing what she did.

That same day, the Lincoln was towed to the Detective Bureau. Detective Decker obtained a search warrant for the Lincoln, which he learned had been rented by Uloho. The resulting search yielded a purse containing two handguns, one of which belonged to Bean. Another handgun was recovered from the front seat of the Lincoln. All three weapons were loaded. A red sweatshirt, a black wig, a red hat, and a bag containing $19,000 in checks and deposits were also recovered from the Lincoln. The cash was later discovered in Deputy Coussou's car. It was later determined that Uloho had stuffed the bags of cash under the seats while she was not handcuffed.

Approximately one month later, Detective Decker showed photographic lineups to three witnesses, who positively identified Thomas as the perpetrator. Two of these witnesses, Stanley Williams and Seneca Williams, testified about the robbery in Alberston's and testified that they had made positive identifications of the robber after viewing a photographic lineup.

Prior to trial, Thomas's counsel filed a motion to suppress the evidence, identification, and the search warrant which was heard and denied by the Trial Court on June 27, 2001.[7] On March 26, and 27, 2001, Thomas and Uloho proceeded to trial before a jury on both charges.[8] On the second day, the Trial Court declared a mistrial after the State decided to amend the armed robbery charge

---

[7] St. Rec. Vol. 1 of 8, Motion Hearing Minutes, 01-1657, 6/27/01; St. Rec. Vol. 4 of 8, Motion Hearing Minutes, 01-1922, 6/27/01.

[8] St. Rec. Vol. 1 of 8, Trial Minutes, 01-1657, 3/26/02; Trial Minutes, 01-1657, 3/27/02; St. Rec. Vol. 4 of 8, Trial Minutes, 01-1922, 3/26/02; Trial Minutes, 01-1922, 3/27/02.

against Uloho to charge her as an accessory after the fact.[9]  The State also dismissed the aggravated

battery charge against Uloho in No. 01-1922.

Elton was called again for trial before another jury on April 2, 2002, and the trial proceeded

on both charges against him.[10]  The jury found Thomas guilty as charged on both counts on April

3, 2002.[11]  On May 16, 2002, the Trial Court sentenced Thomas to serve eighty years in prison

without benefit of probation, parole, or suspension of sentence for the armed robbery conviction and

ten years in prison for the aggravated battery conviction, to be served concurrently with the armed

robbery sentence.[12]  Counsel reserved Thomas's right to appeal.[13]

That same day, the State filed a multiple offender bill of information charging Thomas as

a third offender in connection with the armed robbery conviction.[14]  Thomas entered a plea of not

guilty.[15]  After a hearing held on July 25, 2002, the Trial Court adjudicated Thomas to be a third

felony offender.[16]  The Court sentenced Thomas on January 13, 2003, pursuant to La. Rev. Stat.

---

[9]St. Rec. Vol. 1of 8, Trial Minutes, 01-1657, 3/27/02; Bill of Information, 01-1657, handwritten amended dated 3/27/02; St. Rec. Vol. 4 of 8, Trial Minutes, 01-1922, 3/27/02; St. Rec. Vol. 5 of 8, Trial Transcript, 3/27/02.  The State eventually entered a *nolle prosequi* on the charge in 01-1657 and filed another bill of information against Uloho for obstruction of justice under a new case number not before this Court.  Uloho was found guilty, and her conviction was affirmed in *State v. Uloho,* 875 So.2d 918 (La. App. 5th Cir. 2004), *writ denied,* 888 So.2d 192 (La. 2004).

[10]St. Rec. Vol. 1 of 8, Trial Minutes, 01-1657, 4/2/02; St. Rec. Vol. 4 of 8, 01-1922, Trial Minutes, 4/2/02; St. Rec. Vol. 5 of 8, Trial Transcript, 4/2/02.

[11]St. Rec. Vol. 1 of 8, Trial Minutes, 01-1657, 4/3/02; Jury Verdict (armed robbery), 4/3/02; St. Rec. Vol. 4 of 8, Trial Minutes, 01-1922, 4/3/02; St. Rec. Vol. 5 of 8, Jury Verdict (aggravated battery), 4/3/20; Trial Transcript, 4/3/02.

[12]St. Rec. Vol. 1 of 8, Sentencing Minutes, 01-1657, 5/16/02; St. Rec. Vol. 4 of 8, Sentencing Minutes, 01-1922, 5/16/02; St. Rec. Vol. 5 of 8, Sentencing Transcript, 5/16/02.

[13]St. Rec. Vol. 5 of 8, Sentencing Transcript, p. 8, 5/16/02.

[14]St. Rec. Vol. 1 of 8, Multiple Bill, 5/16/02.

[15]St. Rec. Vol. 1 of 8, Minute Entry, 5/16/02.

[16]St. Rec. Vol. 2 of 8, Multiple Bill Hearing Minutes, 7/25/02; St. Rec. Vol. 7 of 8, Multiple Bill Hearing Transcript, 7/25/02.

Ann. § 15:529.1 to serve life in prison without benefit of parole, probation, or suspension.[17]  Counsel again orally moved for an appeal and for reconsideration of the sentence and indicated that he would follow with written motions.[18]  No such motions were filed.

### B.   Procedural Background

On February 3, 2003, Thomas's counsel filed a motion for leave to file an out-of-time appeal with respect to both cases.[19]  The Trial Court denied the motion on February 17, 2004, because the request was not presented in an application for post-conviction relief as required by Louisiana law.[20]  Shortly thereafter, on March 23, 2003, Thomas's counsel filed an application for post-conviction relief requesting reinstatement of the right to file an out-of-time appeal.[21]  The Trial Court granted the application and appointed appellate counsel for Thomas.[22]  The record also reflects that Thomas later filed his own motion for an out-of-time appeal on May 21, 2001, which was denied by the Trial Court, because it was not presented on an application for post-conviction relief.[23]

---

[17]St. Rec. Vol. 7 of 8, Sentencing Transcript, 1/13/03.

[18]*Id.*, p. 8.

[19]St. Rec. Vol. 2 of 8, Motion for Out-of-Time Appeal, 2/3/04.

[20]St. Rec. Vol. 2 of 8, Trial Court Order, 2/17/04.

[21]St. Rec. Vol. 2 of 8, Application for Post-Conviction Relief Seeking Reinstatement of Right to Appeal, 3/23/03.

[22]St. Rec. Vol. 2 of 8, Trial Court Order, 3/23/04.

[23]St. Rec. Vol. 2 of 8, Motion for Out of Time Appeal, 5/21/03; Trial Court Order, 5/28/03.

After separate appeals were filed from each conviction, the Louisiana Fifth Circuit consolidated the matters for its opinion.[24]  On appeal, counsel raised three assignments of error:[25] (1) the trial court erred in failing to suppress the show-up identification and the photographic identifications; (2) the trial court erred in imposing an excessive sentence as a multiple offender; and (3) error patent on the face of the record, because the Trial Court failed to rule on Thomas's motion to reconsider the sentence.  On May 31, 2005, the Louisiana Fifth Circuit affirmed the convictions and sentences, finding no merit to his claims.  The Court also remanded for correction of the trial minutes for April 3, 2002, to reflect the Court's granting of the motion to jointly try the charges.[26]

On June 13, 2005, Thomas submitted a timely[27] writ application to the Louisiana Supreme Court raising two claims:[28] (1) the trial court erred in failing to suppress the show-up identification and the photographic identifications; and (2) the trial court erred in imposing an excessive sentence as a multiple offender.  The Court denied the application without stated reasons on February 17, 2006.[29]

---

[24]St. Rec. Vol. 4 of 8, Motion to Remand Appeal, 04-KA-56, 2/23/04; 5th Cir. Order, 04-KA-56, 2/26/04.

[25]*State v. Thomas*, 904 So.2d 896, 900-01 (La. App. 5th Cir. 2005); St. Rec. Vol. 4 of 8, 5th Cir. Opinion, 04-KA-1341 c/w 04-KA-1342, 5/31/05; St. Rec. Vol. 7 of 8, Appeal Brief, 04-KA-1342, 12/10/04.

[26]*State v. Thomas*, 904 So.2d at 896; St. Rec. Vol. 4 of 8, 5th Cir. Opinion, 04-KA-1341 c/w 04-KA-1342, 5/31/05.

[27]La. S. Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment.  *See also* La. Code Crim. Proc. art. 922(A).  In the prison context, the Court is also required to consider the appropriate mailbox rule, even to state court pleadings. *Causey v. Cain,* 450 F.3d 601, 604-05 (5th Cir. 2006).  Thomas's writ application was postmarked June 16, 2005, and it was signed for submission on June 13, 2005.  Both dates are within the time period allowed by Louisiana law.

[28]St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 05-KO-2002, 8/1/05 (signed 6/13/05, postmarked 6/16/05); St. Rec. Vol. 2 of 8, La. S. Ct. Letter, 2005-KO-2002, 8/1/05 (showing postmark of 6/16/05).

[29]St. Rec. Vol. 2 of 8, La. S. Ct. Order, 2005-KO-2002, 2/17/06.

Thomas's convictions became final 90 days later, on May 18, 2006, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On June 20, 2006, Thomas submitted a Motion for Production of Documents, in connection with both cases, seeking copies of certain portions of the trial transcript.[30]  On July 11, 2006, the Trial Court denied the motion finding that Thomas was not entitled to the relief sought.[31]

On July 5, 2006, Thomas submitted an application for post-conviction relief to the Trial Court raising the following issues:[32] (1) he was denied his constitutional right to effective assistance of counsel on direct appeal for failure to raise on appeal that trial counsel failed to object to the multiple bill; and (2) he was denied his constitutional right to effective assistance of counsel during the multiple offender proceedings, because counsel failed to challenge the prior conviction based on the constitutionality of the guilty plea.  The Trial Court denied relief on August 7, 2006, finding that his claims were without merit.[33]

---

[30]St. Rec. Vol. 2 of 8, Motion for the Production of Documents, 6/28/06 (dated 6/20/06).

[31]St. Rec. Vol. 2 of 8, Trial Court Order, 01-1657, 7/11/06; St. Rec. Vol. 4 of 8, Trial Court Order, 01-1922, 7/11/06.

[32]St. Rec. Vol. 2 of 8, Application for Post Conviction Relief, 7/24/06 (dated 7/5/06).  Around this same time, Thomas apparently attempted to improperly file a post-conviction application into his prior Louisiana Supreme Court case No. 2005-KO-2002.  He submitted a motion to withdraw that application which was granted. *See* St. Rec. Vol. 2 of 8, La. S. Ct. Letter, 2005-KO-2002, 7/18/06 (to Thomas from Deputy Clerk of Court, Katherine Fontana).

[33]St. Rec. Vol. 2 of 8, Trial Court Order, 8/7/06.

On September 18, 2006, Thomas filed a writ application with the Louisiana Fifth Circuit seeking review of the denial of his application for post-conviction relief.[34]  The Court denied the application on September 22, 2006, finding no error in the Trial Court's ruling.[35]  Thomas's subsequent writ application to the Louisiana Supreme Court was denied without stated reasons on August 31, 2007.[36]

## II.   Federal Petition

On September 26, 2007, the clerk of this Court filed Thomas's petition for federal habeas corpus relief in which he alleged that he was denied effective assistance of appellate counsel on direct appeal and during the multiple offender proceeding.[37]  The State filed a memorandum in opposition arguing that Thomas's petition is untimely filed, that he has failed to state a cognizable federal question, and alternatively, his claims are without merit.  Thomas filed a traverse to the State's response alleging that the defenses raised should be rejected.

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[38] applies to this petition, which is deemed filed in this court under the mailbox

---

[34]*See* St. Rec. Vol. 8 of 8, 5th Cir. Order, 06-KH-685, 9/22/06.  The record does not contain a file-stamped copy of the writ application.  The date of filing, however, appears on the face of the Court's order denying relief.

[35]*Id.*

[36]*State ex rel. Thomas v. State*, 962 So.2d 433 (La. 2007); St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 06-KH-2674, 11/8/06 (postmarked 10/17/06).

[37]Rec. Doc. No. 3.

[38]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

rule on September 9, 2007.[39]  The threshold questions in habeas review under the amended statute

are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on

the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not

be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997)

(citing 28 U.S.C. § 2254(b), (c) (2006)).

The State has alleged that Thomas's petition is time barred based on the United States Fifth

Circuit's opinion in *Salinas v. Dretke*, 354 F.3d 425, 430 (5th Cir.), *cert. denied*, 541 U.S. 1032

(2004).  In *Salinas*, the Fifth Circuit held that the granting of a request for an out-of-time review tolls

the AEDPA limitations period, but it does not restart the running of that period.  As a result, an

already final conviction is not rejuvenated.  *See also*, *McGee v. Cain*, 104 Fed. Appx. 989, 991-92

(5th Cir. 2004) (applying *Salinas* rationale to Louisiana out-of-time appeal).  Application of *Salinas*

and *McGee* would not afford Thomas tolling credit under the AEDPA for the period between his

conviction and the granting of his out-of-time appeal.

After the State filed its response, however, the *Salinas* reasoning, and hence that of *McGee*,

was abrogated by the United States Supreme Court in *Jiminez v. Quarterman*, __ U.S.__, 129 S. Ct.

681, 686-87 (2009).  In *Jiminez*, the Supreme Court held that "where a state court grants a criminal

defendant the right to file an out-of-time direct appeal during state collateral review, but before the

defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of §

---

[39]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Thomas' federal habeas petition on September 18, 2007.  Thomas failed to sign and date  the habeas application and nor was there any record of the post marked envelope for the court to consider  such that September 18, 2007 is the earliest date on which he could have delivered it to prison officials for mailing.

2244(d)(1)(A)." *Jimenez*, 129 S. Ct. at 686.  Instead, a habeas petitioner's state court judgment becomes final upon "the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal." *Id.*, at 686-87.

Thus, when Thomas was granted the out-of-time appeal, his one-year AEDPA filing period effectively began anew when his conviction became final on May 18, 2006, which as discussed above, was 90 days after the Louisiana Supreme Court denied his writ application following the appeal.  A review of his subsequent procedural history reflects that he allowed only 66 days to expire before he presented his petition to this federal court.[40]  Therefore Thomas's petition is timely.

The State also contends that Thomas's petition is not subject to review because he seeks to challenge a current sentence through the attack of an expired conviction that was used to enhance his current sentence.  They rely on *Lackawanna* for their proposition.  *See Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 401-02, (2001).

---

[40]The 66 days are comprised of the following periods.  Thomas allowed 47 days to pass between the finality of his conviction on May 18, 2006, and July 5, 2006, when he submitted his application for post-conviction relief to the state trial court.  The Court notes that the motion for production of documents submitted on June 20, 2006, does not invoke tolling under the AEDPA.  *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523, at *2 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling); *Cf. Gonzales v. Wilkinson*, 269 Fed. Appx. 481, 484-86 (5th Cir. Mar. 12, 2008) (delay in receiving transcript copies does not warrant statutory or equitable tolling where motion based on the transcript was not timely or properly filed under state law).  The application for post-conviction relief remained pending until September 6, 2006, which was 30-days after the Trial Court ruled during which Thomas could have sought review in the appellate court.  La. App. R. 4-3.  Thomas, instead, allowed another 11 days to pass until September 18, 2006, when he filed an untimely writ application in the Louisiana Fifth Circuit.  The AEDPA filing period remained tolled during the pendency of that writ application which was resolved on the merits.  *Grillette v. Warden, Winn Correctional Center*, 372 F.3d 765, 769-70 (5th Cir. 2004).  Because Thomas timely sought review of the appellate court's order in the Louisiana Supreme Court, the tolling period continued through that review until August 31, 2007, when the Louisiana Supreme Court denied relief.  Thereafter, he allowed only eight days to pass, until September 9, 2007, before he is deemed to have submitted this federal habeas petition and related documents to this Court for filing.  Thus, a review of the record reflects that Thomas only allowed 66 days of the one-year AEDPA filing period to pass before presenting his federal habeas petition for filing.

However, Thomas merely seeks to challenge his counsel's assistance, which he believes was ineffective, because his lawyer did not challenge the prior expired conviction during the multiple bill proceeding or on direct appeal. This challenge is not prohibited by *Lackawanna*. Having determined that Thomas has stated a cognizable claim and that the matter is timely, the Court will proceed to review the merits of his claim.

## IV.    Standards of Review on the Merits

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf*. *Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (brackets in original) *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the

precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641

(quoting  *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

## V.    Ineffective Assistance of Counsel

Thomas argues that his appellate counsel was ineffective for failure to raise the issue that his

trial counsel had been ineffective during the multiple bill proceedings when he failed to file written

objections to the plea colloquy  made during the 1986 guilty plea to burglary, Case No. 312-952.

Concerning the constitutionality of the prior plea, Thomas alleges that the court failed to state a

factual basis for the plea when it was accepted as required by Louisiana law which denied "notice

of the critical elements of the crime" to which he was entering the plea.[41]

Thomas first raised these issues in his post-conviction application to the Trial Court.  The

Court denied relief finding that Thomas failed to establish that either his appellate or trial counsel

were ineffective under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).[42]

This was the last reasoned opinion on these issues because the Louisiana Fifth Circuit and the

Louisiana Supreme Court denied relief without articulated reasons.[43]  *Ylst v. Nunnemaker*, 501 U.S.

797, 802 (1991) (when the last state court judgment does not indicate whether it is based on

procedural default or the merits of a federal claim, the federal court will presume that the state court

has relied upon the same grounds as the last reasoned state court opinion).

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Motley*

*v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the

---

[41]Rec. Doc. No. 3, p. 15.

[42]St. Rec. Vol. 2 of 8, Trial Court Order, 8/7/06.

[43]*State ex rel. Thomas v. State*, 962 So.2d at 433; St. Rec. Vol. 8 of 8, 5th Cir. Order, 06-KH-685, 9/22/06.

state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. at 668, relied upon by the Trial Court.  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  To meet the burden of proving ineffective assistance of counsel, petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan*, 980 F.2d at 296; *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all of the circumstances. *See Strickland*, 466 U.S. at 689.  "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

15

In order to prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994). In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id.* In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Motley*, 18 F.3d at 1226 (quoting *Strickland*, 466 U.S. at 693). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000).

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range

of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir.

1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson*, 751 F.2d at 1441.

### A.   **Trial Counsel**

In order to address the performance of appellate counsel, the Court must first consider

whether there was any issue to be raised regarding the effective assistance of Thomas's trial counsel.

As outlined above, Thomas alleges that his trial counsel should have reviewed the plea colloquy and

made the appropriate objections to the use of the 1986 guilty plea during the multiple bill hearing.

He claims that the plea colloquy from that prior conviction demonstrates that the state court failed

to provide a factual basis for the plea rendering the plea unknowing and therefore unconstitutional.

He therefore alleges that counsel should have objected to the use of that prior plea to support the

multiple offender proceeding.

To evaluate counsel's performance, this Court must consider whether there existed any

evidence to which he should have objected and whether that failure was deficient and/or prejudicial

to Thomas.  From an evidentiary perspective, to establish that a defendant is a habitual felony

offender under La. Rev. Stat. Ann. § 15:529.1, the State is required to prove the existence of a prior

felony conviction and that the defendant is the same person who was convicted of the prior felony.

*State v. Shelton*, 621 So.2d 769 (La. 1993); *State v. Staggers*, 860 So.2d 174, 179-180 (La. App. 5th

Cir. 2003) (*citing State v. Davis*, 829 So.2d 554 (La. App. 5th Cir. 2002)); *State v. Warfield*, 859

So.2d 307, 310 (La. App. 2d Cir. 2003).  Certified copies of court records evidencing prior

convictions are sufficient to prove the prior conviction.  *Staggers*, 860 So.2d at 180.  However,

independent proof, such as matching fingerprints and other vital information, is required to show

that the defendant is the same person identified in those records.  *State v. Walker*, 795 So.2d 459, 463 (La. App. 5th Cir. 2001).

The State meets its burden of providing the validity of a multiple offender adjudication if it produces a "perfect transcript" of the taking of the guilty plea, one that reflects a colloquy between judge and defendant where the defendant was informed of, and specifically waived his right to trial by jury and his right to confront his accusers.  *Shelton*, 621 So.2d at 779.  If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the prior guilty plea was informed and voluntary, and made with an articulated waiver of the three *Boykin* rights.  *Shelton*, 621 So.2d at 779.

Under a broad reading, Thomas here argues that it was in failing to meet this burden as to the 1986 conviction that his counsel's performance was deficient and prejudicial.  In support of his claim, Thomas relies on the records and plea transcript from Case No. 312-952 which he claims reveal that the plea was unknowingly made.[44]

A guilty plea that represents a voluntary and intelligent choice among the alternatives available to a defendant to avoid a possible longer sentence is not coerced.  *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  Similarly, under Louisiana law, when a trial judge explains the possible penalties a defendant faces after trial and conviction by jury compared to that offered in a plea agreement, there is no inherent coerciveness.  *State v. Bouie*, 817 So.2d 48, 55 (La. 2002).  The Louisiana Supreme Court has explained that the

---

[44]The Court notes that the plea transcript was not presented by the State at the multiple bill hearing, and according to Thomas something that he later obtained.

advice given by the trial judge in that instance concerns information that an accused should possess to enter a knowing and intelligent guilty plea. *Id.*

In reviewing the records from the 1986 plea, Thomas appeared before the Trial Court on June 18, 1986, and withdrew his plea of not guilty to guilty to burglary under La. Rev. Stat. Ann. 14:62.2.[45] He acknowledged that he was entering a plea to that crime and he confirmed his signature on the plea form, the same form later introduced at the multiple bill proceeding on July 25, 2002, in Case No. 01-1657.[46] On further questioning by the Court, Thomas also acknowledged each of the rights he was waiving by entering the plea, including his right to trial and to appeal, the right to confront his accusers, the right to compulsory process, the right to remain silent, and the right to appointed counsel for trial.[47] Thomas also affirmed that he was not forced, threatened or intimidated into entering this plea.[48]

The Trial Court also explained to Thomas that he was facing a sentence from one to twelve years in prison at hard labor, instead of the agreed upon sentence he received with the plea agreement.[49] The Court also had the following exchange with Thomas:[50]

THE COURT:      The acts constituting the offense to which you are pleading guilty to have been explained to you. Do you know the facts of the case?

MR. THOMAS:     Yes.

---

[45]St. Rec. Vol. 2 of 9, Plea Transcript, 312-952, p. 2, 6/18/86; Plea Minutes, 312-952, 6/18/86.

[46]*Id.*

[47]*Id.*, p. 2-5; *see also*, St. Rec. Vol. 2 of 8, Plea Minutes, 312-952, 6/18/86.

[48]*Id.*, p. 4.

[49]*Id.*, pp. 3, 5.

[50]*Id.*, p. 3.

19

| | |
|---|---|
| THE COURT: | Do you know the law that applies to those facts? |
| MR. THOMAS: | Yes, sir. |
| THE COURT: | Do you understand what you are doing now? |
| MR. THOMAS: | Yes, sir. |

After Thomas indicated that he was satisfied with his attorney's handling of the case and based on his acknowledgments and waivers, the Court determined that Thomas was entering the plea voluntarily and knowingly and accepted the plea.[51]  Thomas was thereafter sentenced to 20 months in prison, with the first year to be served without benefit of parol, probation, or suspension of sentence.[52]

Based on the foregoing, the record from Case No. 312-952, on which Thomas relies, establishes that the facts forming the basis of the burglary charge to which Thomas entered the plea were explained to him prior to his entry of the plea and he acknowledged his understanding of the facts and the law.[53]  The plea was also based on a plea agreement negotiated between counsel, the State, and the Court and which was explained to him prior to entry of the plea.[54]

Considering the foregoing, the record does not demonstrate a basis for Thomas's counsel in Case No. 01-1657 to have entered an objection to the use of the 1986 plea in the multiple offender proceeding in 2002.  The record instead demonstrates, contrary to Thomas's arguments, that the facts and nature of his crime were explained to him before the plea was entered.  He answered at the plea hearing that the facts and law were explained to and understood by him.

---

[51]*Id.*, p. 6.

[52]*Id.*; St. Rec. Vol. 2 of 8, Plea Minutes, 312-952, 6/18/86.

[53]*Id.*, p. 3-4.

[54]*Id.*, p. 5-6.

Thomas did not establish at the state court hearing or on appeal, nor has he demonstrated here, any procedural irregularity in the prior case which would have required his counsel to object. He therefore has failed to establish a deficiency in counsel's performance or any prejudice resulting from the lack of an objection to the multiple bill proceedings.

The state courts' denial of relief on these claims was neither contrary to nor an unreasonable application of *Strickland*.  Thomas is not entitled to relief on this claim.

### B.      Appellate Counsel

Thomas bases his ineffective assistance claim against appellate counsel on his assertion that she failed to raise the issue of the ineffectiveness of his trial counsel for failure to object to the use of the 1986 plea in the multiple bill proceedings.  Having determined that trial counsel's performance was neither deficient nor prejudicial in that regard, Thomas has failed to establish a deficiency in the performance of appointed appellate counsel.  Appellate counsel was not ineffective for failing to raise a meritless issue on appeal.  *See Penson v. Ohio*, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); *Medellin v. Dretke*, 371 F.3d 270, 279 (5th Cir. 2004) (where overall claim without merit, ineffective assistance of counsel claim based on failure to raise issue likewise without merit); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (failure to raise meritless objection not ineffective assistance of counsel); *Williams v. Collins*, 16 F.3d 626, 634-35 (5th Cir.1994) (where issue is without merit, failure to raise the issue on appeal cannot satisfy prejudice prong of *Strickland*).

The state courts' denial of relief on this claims was neither contrary to or an unreasonable application of *Strickland*.  Thomas is not entitled to relief on this claim.

VI.     **Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Elton Thomas's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[55]

New Orleans, Louisiana, this 21st day of December, 2010.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[55]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.